IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KRISTINE M. DISHONG,<br><br>               Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL, Acting Commissioner of the Social Security Administration,<br><br>               Defendant. | 8:15-CV-399<br><br>MEMORANDUM AND ORDER |

      This matter is before the Court on the Commissioner's Motion to Alter or Amend Judgment (filing 18) pursuant to Fed. R. Civ. P. 59(e). The Commissioner asks the Court to remand this case to her for further proceedings, rather than ordering an award of benefits. The Commissioner's motion will be denied.

      The Court has broad discretion in determining whether to grant or deny a motion to alter or amend judgment pursuant to Rule 59(e). *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 934 (8th Cir. 2006). Such motions serve the limited function of correcting manifest errors of law or fact or presenting newly discovered evidence. *Id.* They cannot be used to introduce new evidence, tender new legal theories, or raise arguments which could have been offered or raised prior to entry of judgment. *Id.*; see *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).

      The order that the Commissioner asks to have amended—the Court's Memorandum and Order of May 5, 2017 (filing 16)—sets forth the facts of the case in substantial detail, most of which does not need to be revisited here. Briefly summarized, the Court found that the ALJ erred in a number of

significant ways, most importantly in discounting the opinion of claimant Kristine Dishong's treating doctor, Dr. Michael Egger. Filing 16 at 17-30. As a result, the Court explained,

> Dr. Egger's opinion, when given controlling weight, establishes the required level of severity under the criteria contained in 20 C.F.R. Part 404, Subpart P, Appx. 1, §§ 12.04A and 12.06C. Thus, Dishong's impairment meets or equals a presumptively disabling impairment, so the analysis stops at step three of the five-step sequential analysis, and Dishong is entitled to benefits. In the alternative, the evidence is uncontested that given an RFC based on Dr. Egger's opinion of Dishong's limitations, particularly the days of work she would be expected to miss, there is not a significant number of jobs in the national economy that Dishong can perform. So, even if the sequential analysis proceeds to step five, Dishong is still entitled to benefits. The Court will therefore reverse the Commissioner's decision and remand for an award of benefits.

Filing 16 at 30 (citations and footnote omitted).

The Commissioner does not dispute the Court's findings of error, but does take issue with the Court's conclusion that benefits should be immediately awarded. *See* filing 19. The Commissioner's argument is threefold: she argues that the Court erred in finding that (1) Dishong met the criteria of § 12.04A, (2) Dishong met the criteria of § 12.06C, and (3) Dishong could be expected to miss more than 5 days of work a month. Filing 19 at 3-7.

One point should be clarified at the outset: the Court did err in the paragraph quoted above, but it is not the error the Commissioner thinks. It

is, rather, a typographical error: the Court cited §§ 12.04A and 12.06C when it meant to cite §§ 12.04A and 12.04C.[1] That confusion is compounded by the fact that the Social Security Administration has, by the Court's count, promulgated 20 different versions of Subpart P, App'x 1 since Dishong's alleged date of disability.[2] So, in order to be clear, the Court will further explain its conclusion.

The Commissioner argues that the evidence does not support an immediate finding of disability under § 12.04. Filing 19 at 3-5. The Commissioner points to the proposition that an immediate finding of disability should be entered "only if the record overwhelmingly supports such a finding." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (quotation omitted). And, the Commissioner argues,

> The question of whether Plaintiff met these technical, specific requirements [of § 12.04A], including a manifestation of the full symptomatic picture, is one that requires further administrative fact-finding and evaluation. What qualifies as a full symptomatic picture of both manic and depressive syndromes is a decision

---

[1] The Court does not, therefore, need to discuss the Commissioner's argument with respect to § 12.06C—while the Court understands why the Commissioner made it, § 12.06C was not a basis for the Court's decision.

[2] The Eighth Circuit has applied the version of Social Security administrative regulations in effect at the time of the administrative hearing. *Maresh v. Barnhart*, 438 F.3d 897, 899 n.1 (8th Cir. 2006); *see generally Brady v. Heckler*, 724 F.2d 914, 918-19 (11th Cir. 1984); *cf. Criger v. Becton*, 902 F.2d 1348, 1350-55 (8th Cir. 1990). But when the question is whether the case should be remanded for further administrative proceedings, the Court finds it appropriate to consider both the regulations in effect at the time of the hearing under review and the regulations presently in force.

requiring a medical evaluation and is beyond the capacity of a layman.

Filing 19 at 4.

True enough—but, the Court *has* a medical evaluation, from Dr. Egger. And the "specific, technical" requirements of § 12.04A are effectively identical to the diagnostic criteria for bipolar disorder. As the Commissioner acknowledges, Dr. Egger diagnosed "296.53": the DSM code for Bipolar I Disorder, most recent episode depressed, severe. *See*, Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 126 (5th ed. 2013) [hereinafter "DSM-5"]; Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 319 (4th ed. 1994) [hereinafter "DSM-IV"]. The requirements set forth in the version of § 12.04A in effect at the time of the ALJ's decision mirror the diagnostic criteria of the DSM-IV. *Compare* § 12.04A (effective Feb. 26, 2014 to Dec. 8, 2014) *with* DSM-IV at 327, 332, 335, 357. And the current requirements of § 12.04A mirror the diagnostic criteria of the DSM-5. *Compare* § 12.04A *with* DSM-5 at 124, 126. In other words, Dr. Egger's diagnosis—which, it should be remembered, is entitled to controlling weight—necessarily meets the Paragraph A criteria.

Under the current regulations, a presumptively disabling impairment under § 12.04—the listing for "Depressive, bipolar and related disorders"—is satisfied by meeting § 12.04A and either § 12.04B or § 12.04C. And under the current regulations, § 12.04C requires a "serious and persistent" mental disorder: medically documented history of the disorder over a period of at least 2 years, and evidence of both (1) ongoing medical treatment that diminishes the signs and symptoms of the disorder and (2) minimal capacity to adapt to changes in environment or demands not already part of daily life. In this case, Dishong's medical history, and the records of her ongoing

medical treatment, are clear. And Dr. Egger's opinion is clear about Dishong's "very limited ability to set shift & refocus on new data or direction." T458.

Under the regulations in effect at the time of the administrative hearing, a presumptively disabling impairment under § 12.04—the listing for "Affective Disorders"—is satisfied by meeting both § 12.04A and § 12.04B, or meeting § 12.04C. And § 12.04C required

> [m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

While Dishong is capable of living independently, her medical records are clear on the history of her disorder and its limitation on her ability to work, along with repeated episodes of decompensation of extended duration.

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

§ 12.00(C)(4) (effective Feb. 26, 2014 to Dec. 8, 2014). Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. *Id.* And the records show three episodes of decompensation in the year prior to the administrative hearing, in June, July, and October 2013. T412-14, 420, 424-25.

But finally, the Commissioner also disputes the Court's alternative conclusion that even if the five-step sequential analysis proceeds to step five, Dishong is still entitled to benefits.[3] The Commissioner argues that "Dr.

---

[3] The Commissioner has not reasserted her claim that Dishong was, at step four, capable of performing her past relevant work, and Dr. Egger's opinion precludes such a finding.

Egger was not specific, nor did Plaintiff's representative ask him to be specific, about why Plaintiff would miss five or more days [of work] a month." Filing 19 at 6. But Dr. Egger's opinion was entitled to controlling weight, and was sufficient to meet her burden to establish her residual functional capacity. *See Hensley v. Colvin,* 829 F.3d 926, 932 (8th Cir. 2016). That opinion established that Dishong was unemployable, and the Commissioner did not meet her burden to produce evidence showing otherwise. *See id.*

The Commissioner also contends that "[a]s a corollary, the vocational expert stated that the percentage of impairment that Dr. Egger proposed in work-related categories *did not* indicate disability." Filing 19 at 7. That contention is not consistent with the record. When asked about *one* of the work-related limitations about which Dr. Egger opined, the vocational expert said that such a person would still be employable. *Compare* T69-70 *with* T456-57. But when asked about *all* the limitations, the vocational expert said that the person would not be able to sustain employment. *Compare* T70 *with* T456. In other words, according to the vocational expert, a person with the limitations ascribed to Dishong by Dr. Egger would be unemployable because of absenteeism, and—independently—also unemployable because of limitations on her sustained concentration and memory.

In sum, while reversal and remand for an immediate award of benefits is only appropriate where the record overwhelmingly supports a finding of disability, the Court finds that "the clear weight of the evidence fully supports a determination [Dishong] is disabled within the meaning of the Social Security Act." *See Pate-Fires v. Astrue,* 564 F.3d 935, 947 (8th Cir. 2009). More importantly, the Eighth Circuit has repeatedly approved of immediately awarding benefits based upon the controlling weight of a claimant's treating medical provider. *See, id.*; *Shontos v. Barnhart,* 328 F.3d

418, 427 (8th Cir. 2003); *Cunningham v. Apfel*, 222 F.3d 496, 503 (8th Cir. 2000); *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000); *cf. Papesh v. Colvin*, 786 F.3d 1126, 1135-36 (8th Cir. 2015). And where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate. *Hutsell v. Massanari*, 259 F.3d 707, 714 (8th Cir. 2001).

IT IS ORDERED that the Commissioner's Motion to Alter or Amend Judgment (filing 18) is denied.

Dated this 18th day of July, 2017.

BY THE COURT:

John M. Gerrard
United States District Judge